UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL ACTION NO. 07-50-DLB

EDWARD ROBINSON,                                                          PLAINTIFF

V.

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,                                                       DEFENDANT

REPORT & RECOMMENDATION

Plaintiff filed a *pro se* employment discrimination complaint in the United States District

Court for the Southern District of Ohio, but that court granted defendant's unopposed motion to

transfer venue to this district on March 7, 2007.   Pursuant to local practice, the case has been

referred to the undersigned magistrate judge for initial consideration and a report and

recommendation.  28 U.S.C. §636(b).

### I.  Factual and Procedural Background

In his complaint, plaintiff alleges that his former employer, the Transportation Security

Administration ("TSA"), a division of the Department of Homeland Security, discriminated

against him on the basis of his race (African-American).  Plaintiff's complaint states that his

termination from employment -allegedly for falsifying a time card - was both discriminatory and

evidence of disparate treatment because he did not falsify his time records and because a

similarly situated Caucasian employee was not terminated.  Plaintiff further alleges that he was

terminated in retaliation for complaining about race discrimination.

The defendant has moved for dismissal pursuant to Civil Rule 12(b)(6) or in the

alternative, for summary judgment pursuant to Civil Rule 56(b) and (c) [doc. 19].  Although the

plaintiff was provided ample opportunity to respond to the defendant's motion, he has failed to do so.

Plaintiff began working for TSA on September 29, 2002 as a screener at the Cincinnati/Northern Kentucky International Airport ("CVG"). In June 2004, plaintiff applied for a promotion, but was not selected for an interview. When he failed to achieve the promotion, plaintiff met with a supervisor, Paul Wisniewski, to complain about perceived discrimination. Wisniewski suggested that plaintiff apply for the National Screening Force ("NSF"), which plaintiff subsequently did. Wisniewski recommended plaintiff for the position, and the recommendation was thereafter sent to TSA headquarters for a final decision.

On July 20, 2004, plaintiff suffered an on-the-job injury which resulted in him being off work for several months on medical leave. While on leave, plaintiff was notified of his selection for the NSF position, but he was not eligible to deploy due to his medical restrictions. Prior to his injury, plaintiff had requested a transfer to the airport in Dayton, Ohio near plaintiff's residence. Wisniewski approved plaintiff's transfer but again, the transfer failed to take place because of plaintiff's medical restrictions as well as his eventual termination.

In October 2004, Scheduling/Operations Officer Kevin Harris ("Harris") contacted plaintiff to ask if plaintiff was available and interested in working a non-screening position at CVG within plaintiff's restrictions. Plaintiff expressed his interest, and Harris and plaintiff agreed that plaintiff would work 10-hour days five days per week, beginning on October 23 and continuing until November 3, 2004.

On October 23, 2004, plaintiff reported for duty at the non-screening position he was assigned to work. However, plaintiff called Harris by telephone that same morning to advise him

that the assigned checkpoint was closing early.  Harris instructed plaintiff to report to a second location, the vehicle search area, to finish his scheduled shift, whereupon plaintiff asked for his shift to be reduced to 8 hours given that other screeners would be on duty.  Harris approved the change and instructed Robinson to record his time accordingly.

Later the same day, plaintiff called to request rain gear, which Harris subsequently delivered to the vehicle search area.  When Harris delivered the equipment, Robinson was nowhere in sight; however, because the time was 3:45 and Robinson's 8 hour shift would have concluded at 3:30, Harris assumed that Robinson had left as previously discussed.   Nevertheless, Robinson recorded his work time as eight regular hours and two hours overtime for the day.

On October 29, 2004, Robinson was again scheduled to work 10 hours but had a medical appointment which required him to be absent the entire shift.  Robinson notified Harris the day prior to the appointment so that Harris could schedule a replacement; Harris instructed plaintiff to annotate his Time and Labor ("T&L") Report to reflect his absence as sick leave.  Instead, Robinson wrote that he worked 8 regular hours and two hours overtime for the day.  Plaintiff received pay for all the time he recorded on both October 23 and October 29, 2004.

On November 2, 2004, plaintiff called the screening manager's office to notify them that he would be absent for his scheduled shift on November 3 due to a medical appointment.  He spoke to Lori Beighle ("Beighle") who, learning for the first time that Robinson had not been reporting to a manager since returning to work on October 23, immediately assigned him to a manager.  Robinson claimed he was entitled to be paid for days he had medical appointments.  Beighle admonished Robinson concerning his duty to communicate his medical appointments, and informed plaintiff he would have to take leave for the absence or request leave without pay.

She became concerned when plaintiff continued to argue with her and appeared not to accept her explanation for procedures he must follow, or respect the position she held.

Beighle subsequently e-mailed the newly assigned screening manager to ensure that Robinson had correctly coded his November 3 absence.  Beighle also e-mailed all other screening managers and others including the scheduling officer (Harris) to inform them of her concerns and to seek verification of the accuracy of plaintiff's two prior T&L Reports.  Pursuant to Beighle's e-mail, Harris obtained a copy of a surveillance video taken of the vehicle search area for October 23, and verified that plaintiff had worked no overtime that day, contrary to his T&L report.  Officials also investigated and confirmed that Robinson was absent from work for a doctor's appointment the entire day of October 29, but falsely reported having worked 10 hours. Following the investigation and discovery of the two false reports, Assistant Federal Security Director for Screening, John Tombone, issued Robinson a Notice of Proposed Removal dated November 29, 2004.

Wisniewski met with Robinson about the Notice and was persuaded that Robinson's conduct was intentional and not mitigated by any excuse.  Based on the violations, Wisniewski issued a decision terminating Robinson.

In response to his termination, Robinson filed an EEOC complaint.  Robinson claimed that Christopher Cummings, a Caucasian employee/screener, had submitted an erroneous T&L Report but was not terminated.  However, at the EEOC hearing a manager testified that Cummings was a new hire who had been on the job only two months, that Cummings not only reported hours not worked but omitted from his report overtime hours actually worked, and that Cummings rescinded his T&L Report when confronted with the errors and therefore was never

4

erroneously paid.

The Administrative Judge ("AJ") entered judgment in favor of TSA on June 19, 2006, finding that Robinson did not work overtime on October 23 or any hours on October 29 but erroneously recorded time worked both days, and that TSA's belief that Robinson's conduct was intentional was reasonable.  The AJ also found that plaintiff failed to produce evidence to rebut the agency's proffered explanation for the termination.

With respect to plaintiff's claim that he was treated differently than Christopher Cummings, the AJ found Cummings not to be similarly situated since he was a new hire (versus Robinson's employment for over two years), and because Cummings rescinded his T&L report before payment whereas plaintiff received payment for the unworked hours.  In addition, there was no evidence Wisniewski knew anything about Cummings when he decided to terminate Robinson.   Doc. 1, Exhibit 19.

Plaintiff next filed suit in this court, alleging the same claims.

## II.  Analysis

### A.  Standard of Review

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must construe the allegations in the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true.  *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). In addition, allegations are liberally construed where, as here, the plaintiff proceeds *pro se.*

In this case, the defendant argues that plaintiff's complaint is so deficient that it fails to state a claim.  However, the defendant's motion is posited in the alternative, as either a motion to dismiss or as a motion for summary judgment.  Because the defendant has submitted and this

court has considered multiple exhibits including the EEOC administrative record, it is more appropriate to consider the motion as one for summary judgment.

Summary judgment is appropriate when no material facts are in dispute and when the undisputed facts, viewed in the light most favorable to the non-moving party, entitle the moving party to judgment as a matter of law. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1379 (6th Cir. 1989). The defendant has produced evidence to support the facts recited above, and the plaintiff has produced no contrary evidence to suggest any dispute in those facts other than the single conclusory statement in his complaint that he did not falsify his time record. Plaintiff's single allegation in his complaint, refuted by ample evidence produced by the defendant and unsupported in any fashion by the plaintiff, is not sufficient to create an issue of material fact. *See Gaurino v. Brookfield Township Trustees*, 980 F.2d 399, 405-406 (6th Cir. 1992)(noting that the party opposing the motion, not the court, is responsible for providing supporting facts to defeat a dispositive motion).

**B. Plaintiff's Title VII Claims**

Plaintiff's allegations must be evaluated under the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). To prove his claim, Robinson bears the burden of showing that he: (1) is a member of a protected group; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated, non-protected employees. *Macy v. Hopkins Co. Sch. Board of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007). If plaintiff meets his burden of establishing a *prima facie* case of discrimination, then the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its adverse employment action. *McDonnell Douglas*, 411 U.S. at

802.  If the employer satisfies its burden, then the burden reverts to the plaintiff to show that the proffered reason is a mere pretext for the alleged discrimination.  *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506-507, 113 S. Ct. 2742 (1993).

On the facts presented, I conclude that plaintiff has established the minimal requirements of a *prima facie* case of racial discrimination: 1) he is black; 2) he had been working in the position of screener for more than two years and is presumed to have been qualified; 3) he was terminated; and 4) a Caucasian screener was not terminated.  The defendant does not dispute the fact that plaintiff's allegations are sufficient to satisfy his *prima facie* burden, but instead argues that plaintiff has failed to rebut its non-discriminatory reason for terminating the plaintiff.

### 1.  Plaintiff's Failure to Rebut Defendant's Non-discriminatory Reason for Termination

The defendant has satisfied its burden of production by articulating a legitimate, non-discriminatory reason for plaintiff's termination, namely, his falsification of his T&L reports. When an employer proffers a nondiscriminatory reason, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.  *See Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001); *see also McDonnell Douglas Corp.*, 411 U.S. at  802-04.

To rebut the legitimate nondiscriminatory reason proffered by defendant, the plaintiff is required to show by a preponderance of the evidence either that (1) the proffered reason had no basis in fact, (2)  the proffered reason did not actually motivate defendant's decision not to terminate or (3) the proffered reason was insufficient to motivate defendant's actions.  *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (age discrimination).  Here, the plaintiff has failed to offer any evidence at all to challenge the

credibility of the employer's proffered reason for termination, a non-discriminatory decision which finds ample support in the record.  Therefore, the defendant is entitled to judgment as a matter of law on plaintiff's primary claim of discriminatory treatment.

### 2.  Disparate Treatment Claim

Part of plaintiff's claim involves an allegation of disparate treatment.  However, defendant has produced unrebutted evidence that the Caucasian employee identified by plaintiff in his Complaint was not, in fact, similarly situated to plaintiff.   Defendant points to the following evidence as differentiating the two employees: (1) Cummings had two months of experience on the job versus the plaintiff's two years of experience; (2) in addition to making an error in his favor, Cummings erred in his employer's favor by omitting overtime hours actually worked, whereas the plaintiff added both regular and overtime hours that he did not work in two separate T&L reports; (3) when both employees were notified of their error, Cummings rescinded his T&L report while the plaintiff did not;  (4) Cummings was not paid for his erroneous T&L Report but the plaintiff received both regular and overtime pay for hours he did not work; and (5) the decisionmaker, Wisniewski, was unaware of Cumming's errors prior to his decision to terminate plaintiff [doc. 19 pp. 32].   Defendant's unrebutted evidence is sufficient to demonstrate that plaintiff and Cummings were not similarly situated. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006).

In short, plaintiff has not met his burden of showing that the reason proffered by defendant for his termination and/or the allegedly disparate treatment was pretextual.  There simply is no evidence of record from which a rational fact finder could infer that defendant lied about its proffered reason for the termination.

### 3. Plaintiff's Failure to Prove Retaliation Claim

The defendant is also entitled to judgment on plaintiff's retaliation claim.  To prove his retaliation claim, plaintiff must show that 1) he was engaged in a protected activity; 2) his employer had knowledge of her protected activity; 3) he suffered an adverse employment action; and 4) a causal connection exists between the protected activity and adverse employment action. *See Clay v. United Parcel Service, Inc.*, 501 F.3d 713 (6th Cir. 2007).   The defendant concedes that plaintiff has satisfied the first three elements of his retaliation claim, but vigorously disputes that plaintiff has carried his *prima facie* burden on the fourth element.

On the record presented, the only support for a causal connection appears to be that plaintiff's termination occurred fewer than six months after he complained about his failure to obtain a promotion.  Plaintiff complained to Wisniewski about alleged discriminatory promotion practices in June 2004, and was terminated by Wisniewski in December 2004.  However, in the intervening months, Wisniewski took two positive steps to assist plaintiff in obtaining a promotion and/or relocation by 1) formally recommending him for the NSF position; and 2) approving his request to transfer to an airport closer to his home.  Both steps were taken prior to plaintiff's absence from work due to his on-the-job injury and the October 2004 events which led to plaintiff's disciplinary termination.

The investigation of plaintiff's time records was not initiated by Wisneiwski, but instead by Harris and Beighle in November 2004.  Witnesses provided unrebutted testimony that the investigation resulted from plaintiff's conduct and demeanor in arguing with Beighle about the protocol for his medical absence.  The temporal proximity between plaintiff's complaints and his termination, standing alone, is insufficient to satisfy plaintiff's *prima facie* burden on causation.

9

Thus, the defendant is entitled to judgment as a matter of law due to plaintiff's failure to establish the necessary fourth element of his retaliation claim. *See Allen v. Michigan Dept. of Corrections,* 165 F.3d 405, 413 (6th Cir. 1999) (holding that while the burden is not onerous and no one factor is dispositive in establishing a causal connection, sufficient evidence is required in order to show an inference that the adverse action would not have been taken had the plaintiff not filed a discrimination action**).**

Even if plaintiff had satisfied his *prima facie* burden, the defendant would still be entitled to summary judgment on plaintiff's retaliation claim based upon the defendant's proffered non-discriminatory reason for the termination. *See Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007) (*McDonnell Douglas* framework of shifting burdens of production and proof applies to retaliation claims).   Evidence from TSA's investigation demonstrates that the employer reasonably believed that plaintiff recorded unearned overtime on his October 23, 2004 T&L Report, and both regular and overtime on his October 29, 2004 T&L Report [doc. 19, p. 29]. Plaintiff admitted that he knew he was required to accurately report his work and leave times correctly at all times, that he was aware he was to ask his supervisor whenever he had questions about his T&L Report, and that he had been trained on completing his T&L Report. [Ex. 9: Hr'g Tr. Robinson at 111-113].   Nothing in the record casts any shadow of doubt on defendant's proffered non-discriminatory reason for terminating the plaintiff.

**III.   Conclusion and Recommendation**

For the reasons stated herein, **IT IS RECOMMENDED THAT** the defendant's motion to dismiss or in the alternative motion for summary judgment [Doc. 19] be construed as a motion for summary judgment and be **granted,** and that this case be dismissed from the active docket.

Particularized objections to this Report and Recommendation must be filed with the

Clerk of Court within ten (10) days of the date of service or further appeal is waived. *U.S. v.*

*Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*,

474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is

not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50

F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir.

1991)).   Poorly drafted objections, general objections, or objections that require a judge's

interpretation should be afforded no effect and are insufficient to preserve the right of appeal.

*Howard*, 932 F.2d at 509.  A party may respond to another party's objections within ten days of

being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).


This the 18ᵗʰ day of July 2008.


**Signed By:**

*J. Gregory Wehrman*

**United States Magistrate Judge**